CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 26 2012
*for Charlottesville*
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CAROL J. KOENIG, | ) |
| | )    Civil Action No. 3:11CV00060 |
| Plaintiff, | ) |
| | )    **MEMORANDUM OPINION** |
| v. | ) |
| | )    By: Hon. Glen E. Conrad |
| JOHN MCHUGH, SECRETARY OF THE | )    Chief United States District Judge |
| ARMY, | ) |
| | ) |
| Defendant. | ) |

Carol J. Koenig filed this action under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e to 2000e-17 ("Title VII"), asserting claims of race discrimination, retaliation,

and hostile work environment. The case is presently before the court on the defendant's motion

to dismiss. For the reasons that follow, the motion will be granted in part and denied in part.

## Background

The following facts, taken from the plaintiff's complaint, are accepted as true for

purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The events giving rise to the instant action occurred in 2007. At that time, Koenig was

employed by the Department of the Army as a technical information specialist at the National

Ground Intelligence Center ("NGIC") in Charlottesville, Virginia. Koenig, who is Caucasian,

had held that position since 2002.

On Thursday, August 2, 2007, Koenig's African-American coworker, Dorsell Williams,

who was also employed as a technical information specialist, left an unwashed cup and spoon in

the sink in the employee kitchen. The unwashed cup and spoon remained in the sink over the

weekend, which "was not in accordance with applicable established rules, directives or

regulations." (Compl. at ¶ 12.)  Consequently, on Monday, August 6, 2007, Koenig, who served

on the committee responsible for cleaning the kitchen, "disposed of [the cup and spoon] by

throwing them out." (Id. at ¶ 10.)  At that time, Koenig did not know that the items belonged to

Williams.

On August 6, 2007, Williams sent Koenig an email asking if Koenig had thrown away her

personal property.  Williams emphasized that the cup had a "footprint in the sand verse and scene

on it," and that it had sentimental value.  (Id. at ¶ 14.)  In her reply email, Koenig asked Williams

whether the cup was the same one that had been left in the sink "most of last week." (Id. at ¶ 15.)

After receiving Koenig's reply email, Williams sent Koenig another email at 7:30 a.m. on

August 7, 2007, in which she stated that she "equate[d] throwing away another person's personal

property to stealing." (Id. at ¶ 16.)  In response, Koenig advised Williams that she had disposed

of the unwashed cup and spoon on Monday, August 6, 2007, after they had been left in the sink

since the previous Thursday.

Approximately 45 minutes later, Williams sent an email to the equal employment

opportunity ("EEO") officer at NGIC, Deborah Miller; the security officer, Edith Napier; and

legal counsel, Gerald Reimers.  In the email, Williams complained about Koenig's actions and

stated that she considered such actions to constitute theft.

Shortly thereafter, Williams sent Koenig another email, which stated: "You have the

nerve to admit you trashed a cup that meant the world to me and not even offer an apology.

Through it all I take comfort in knowing in the Bible God says vengeance is mine." (Id. at ¶ 19.)

At 9:45 a.m. on August 7, 2007, Deborah Miller forwarded the email Williams sent to

Miller and others to Maureen Finn, a human resources officer at NGIC.  Miller noted that she

was forwarding the email because Finn "may get involved if disciplinary action is required." (Id. at ¶ 20.)

Later that day, at approximately 4:13 p.m., Koenig sent an email to her direct supervisor, Lois Bailey, advising Bailey that she was concerned about her personal safety at work, in light of Williams' reference to vengeance. Bailey subsequently informed Koenig that Williams had involved Deborah Miller, Edith Napier, and Gerry Reimers in the matter.

On August 16, 2007, Koenig sent an email to Napier and Reimers requesting their assistance. The email was copied to Miller, Finn, and Bailey. In the email, after quoting portions of the messages she received from Williams, Koenig stated as follows:

1.  Ms. Dorsell Williams has threatened my work safety and security by stating that she is seeking vengeance against me.

2.  Ms. Dorsell Williams has libeled me by writing that my actions are equal to those of a thief.

3.  Ms. Dorsell Williams has slandered me by telling other NGIC employees that my actions are those of a thief.

4.  Ms. Dorsell Williams has blatantly disrespected me by disparaging my volunteer coffee committee efforts a.) when I didn't buy her specifically preferred type and brand of tea, and b.) when I cleaned and procedurally disposed of property that is clearly UNAUTHORIZED by NGIC regulations.

This deliberate, unwarranted verbal and emotional attack on me has caused me great anxiety when I am at NGIC where I am now forced to labor in a hostile work environment. This hostile work environment has been created by Ms. Dorsell Williams' slander, libel and threats against me. Presently I am so upset that I am unable to perform my job duties to the best of my abilities. The stress that she has created has caused me sleep deprivation, grievous emotional distress and intestinal disorders which are affecting my general health just as I am about to be scheduled for serious eye surgery.

> I ask for your assistance in helping NGIC meet its Federal managerial obligations to provide all employees with a safe, stress-free, healthy work environment.
>
> I ask that NGIC suspend Ms. Dorsell Williams for creating this racially undertoned hostile work environment at NGIC.

(Id. at ¶ 23.)

On August 20, 2007, Reimers sent a reply email to Koenig, which was copied to Napier,

Bailey, Finn, and Miller.  The email stated as follows:

> Ms. Koenig, your email below indicates that it is your desire to meet individually to discuss punishment of Ms. Williams.  Whether these individuals wish to meet with you individually or collectively is their call make [sic] and not yours.  If you don't want to meet with them if they choose the latter so be it.  Additionally, I am advising them as government employees that the topic of another person's discipline with you would be entirely improper and will not be discussed with you.  Such a topic/matter is within the purview of the other person's supervisory chain of which you are not a part.  Your allegation of slander/libel is baseless.  Taking another person's property without their permission and permanently depriving them of it is by definition larceny, stealing, theft, etc . . . . whatever you call it, it is what it is, the fact that you don't like it doesn't change things.  Additionally, quoting from scripture with a focus on the word "vengeance" is hardly something any third party would reasonably construe as a physical threat to your person.  You don't have a case.  Your chain of command will address your improper taking of another person's property independently.  As for your allegations, I will advise her chain of command that I see absolutely no case for misconduct based on what you've presented.  What I do see is a tit-for-tat preemptive attempt on your part to try and dissuade your chain from acting upon your own misdeed.  I can assure you this, that I will completely, thoroughly, and successfully defend any such frivolous action you may bring against the government.

(Id. at ¶ 24.)

Koenig alleges that Reimers continued to be involved in the disciplinary process, which

ultimately resulted in Koenig being issued a "warning letter" from her direct supervisor on

August 27, 2007.  (Id. at ¶ 26.)  Koenig emphasizes that Williams did not receive a warning letter

or any other form of discipline.

The letter issued to Koenig, which was submitted as an exhibit to the defendant's motion to dismiss, provided as follows:

> TO:   Ms. Carol Koenig
>
> SUBJECT:   Letter of counseling
>
> 1.      This written counseling is intended to express my concern about your recent behavior on or about August 6, 2007 when your co-worker Ms. Dorsell Williams left a cup and spoon belonging to her in the common office sink area and during your clean up you disposed of them without regard to her wishes or her personal property.  This unacceptable behavior towards Ms. Williams was discourteous and will not be tolerated.  I expect you to treat all of your co-workers with respect, since working relationships are critical to mission needs.
>
> 2.      You are advised that this written counseling will not be made a matter of record in your Official Personnel File.  If, however, your misconduct persists after receiving this written counseling, I will consider taking formal disciplinary action against you.  Depending on the particular circumstances, such action could include the full range of available penalties including your removal from Federal Service.  If you have any questions concerning any information in this letter, please contact me for clarification.

(Mot. to Dismiss, Ex. A.)  Koenig alleges that the letter "subjected [her] to more serious discipline than she would otherwise be subject to in the future in the event there were future charges of misconduct."  (Compl. at ¶ 29.)

After being disciplined by her employer, Koenig timely pursued and exhausted her administrative remedies with the United States Equal Opportunity Commission ("EEOC").  On August 29, 2011, Koenig learned that her EEOC case was dismissed with prejudice.

Koenig filed the instant action on September 20, 2011.  The defendant has moved to dismiss Koenig's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The court held a hearing on the defendant's motion on March 1, 2012.  The motion is ripe for review.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."

Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  When reviewing a claim

under this rule, the court must accept all of the allegations in the complaint as true and draw all

reasonable inferences in favor of the plaintiffs. Id. at 244.  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In other words, the factual allegations

(taken as true) must 'permit the court to infer more than the mere possibility of misconduct.'" A

Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655

F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 129 S. Ct. at 1950).

While extrinsic evidence must generally not be considered at the Rule 12(b)(6) stage, "a

court may consider official public records, documents central to plaintiff's claim, and documents

sufficiently referred to in the complaint so long as the authenticity of these documents is not

disputed." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) (citing Alternative

Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).  In this case, the

defendant submitted a copy of the plaintiff's letter of counseling with his motion to dismiss.

Because Koenig specifically refers to the letter in her complaint and does not dispute the

exhibit's authenticity, the court may properly consider the letter without converting the motion to

dismiss to one for summary judgment. Id.

## Discussion

### I.    Race Discrimination

In Count One of her complaint, Koenig asserts a claim of race discrimination under Title

VII.  Based on her allegations, it appears that this claim is best characterized as one for

6

discriminatory discipline.  Koenig alleges that she received a warning letter describing her disposal of the unwashed cup and spoon as "unacceptable" and "discourteous," whereas "Ms. Williams received no warning letter or any discipline as a result of conduct or e-mails related to [Koenig] and the coffee cup and spoon."  (Compl. at ¶ 28-30.)

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . . "  42. U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of discriminatory discipline under Title VII, the plaintiff must show: (1) that she is part of a class protected by Title VII; (2) that her prohibited conduct was comparably serious to misconduct by an employee outside the protected class; and (3) that the disciplinary measures taken against her were much more harsh than those enforced against the other employee.  See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).

In moving to dismiss Koenig's claim of discriminatory discipline, the defendant first argues that the claim fails because the complaint does not identify any adverse employment action taken against Koenig.  The defendant maintains that the letter of counseling issued to Koenig does not rise to the level of an adverse employment action for purposes of Title VII.

It is not entirely clear from the existing case law whether a claim of discriminatory discipline requires the level of adverse action ordinarily required to pursue a claim under Title VII.[1]  Compare Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F. App'x 351,

_____

[1] An adverse employment action has been defined as "a discriminatory act which adversely affects the terms, conditions or benefits of the plaintiff's employment."  James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004).

354 (4th Cir. 2009) ("An allegation of discriminatory discipline however, does not necessarily require proof of an adverse employment action."), with James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required."); see also Lloyd v. New Hanover Reg'l Med. Ctr., No. 7:06-CV-130-D, 2009 U.S. Dist. LEXIS 26429, at *31-32 (E.D. N.C. Mar. 31, 2009) (declining to address the defendant's argument that the court must first determine whether the discipline at issue constituted an adverse employment action). Nonetheless, even if an adverse employment action is required to prevail on a claim of discriminatory discipline, the court is unable to conclude that Koenig's claim is subject to dismissal on this basis.

In this case, Koenig was issued a letter of counseling by the defendant. While the defendant has cited several cases in which courts have held that a written reprimand did not constitute an adverse employment action, all of the cases highlighted by the defendant were decided on summary judgment, following further development of the record. Moreover, as Koenig emphasizes in her brief in opposition, courts have held that a written warning or letter of counseling may rise to the level of an adverse employment action "if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." Medina v. Income Support Div., 413 F.3d 1131, 1137 (10th Cir. 2005); see also Roberts v. Roadway Express, 149 F.3d 1098, 1104 (10th Cir. 1998) (holding that the plaintiff's written warnings constituted adverse employment actions, where "the record indicate[d] that the more warnings an employee received, the more likely he or

8

she was to be terminated for a further infraction"); <u>Newman v. Giant Food, Inc.</u>, 187 F. Supp. 2d 524, 528 (D. Md. 2002) (holding that the plaintiff failed to establish that a counseling letter constituted an adverse employment action, since he had not presented any evidence that the reprimand was "counted against him," or that it "potentially led to termination, demotion, a decrease in pay or similar adverse action"). Given Koenig's assertion that the letter of counseling subjected her to more serious discipline than she would have otherwise faced if the letter had not been issued, the court is unable to conclude, at this stage of the litigation, that Koenig did not suffer an adverse employment action.

Alternatively, the defendant seeks dismissal of Koenig's claim of discriminatory discipline on the basis that Koenig and Williams "engaged in different conduct," and thus are not proper comparators. (Reply Br. at 6.) As set forth above, the second element of the prima facie case requires the plaintiff to show that her prohibited conduct was comparably serious to misconduct by an employee outside the protected class. <u>Cook</u>, 988 F.2d at 511. In evaluating this element, a court should "assess[] the gravity of the offenses on a relative scale." <u>Moore v. City of Charlotte</u>, 754 F.2d 1100, 1007 (4th Cir. 1985). Exact similarity between the compared offenses is not required. <u>Id.</u>; <u>see also Cook</u>, 988 F.2d at 511 ("[T]he comparison will never involve precisely the same set of work-related offenses occurring over the same period and under the same sets of circumstances.").

Applying these principles, the court is constrained to conclude that the plaintiff's discriminatory discipline claim is sufficient to withstand the defendant's motion to dismiss. The actions of both technical information specialists originated from the unwashed cup and spoon deposited in the employee kitchen sink; Williams left the unwashed items in the sink for several

days, which ultimately led to their disposal by Koenig.  According to the complaint, Koenig

acted "in accordance with applicable regulations" by disposing of the items, whereas Williams'

"conduct in leaving her dirty cup and spoon in the employee kitchen sink was not in accordance

with applicable established rules, directives or regulations." (Compl. at ¶¶ 11-12.)  Koenig was

ultimately cited for being "discourteous" to a coworker (Mot. to Dismiss, Ex. 1), and she

maintains that Williams engaged in similar misconduct by sending discourteous emails, one of

which arguably threatened "vengeance" (Compl. at ¶ 19).  Although the employees did not

engage in precisely the same underlying conduct, the court is unable to conclude, at this stage of

the litigation, that the employees' actions were not of comparable gravity.  For these reasons, the

defendant's motion will be denied with respect to Count One.

## II.    <u>Retaliation</u>

In Count Two of her complaint, Koenig asserts a claim of retaliation under Title VII.  In

addition to prohibiting discrimination on the basis of a protected trait, Title VII makes it unlawful

for an employer to retaliate against an employee for engaging in activity protected by the statute.

<u>See</u> 42 U.S.C. § 2000e-3(a).  To make out a prima facie case of retaliation, a plaintiff must show:

(1) that she engaged in a protected activity; (2) that the defendant took a materially adverse action

against her; and (3) that a causal connection existed between the protected activity and the

materially adverse action.  <u>EEOC v. Navy Fed. Credit Union</u>, 424 F.3d 397, 405-406 (4th Cir.

2005).

In this case, Koenig asserts that she engaged in protected activity when she sent the

August 16, 2007 email, in which she complained about Williams' conduct and alleged that her

coworker had created a "racially undertoned hostile work environment." (Compl. at ¶ 23.)

Rather than challenging whether the email qualifies as protected activity,[2] the defendant argues that the retaliation claim fails because Koenig "alleges no subsequent materially adverse employment action." (Br. in Supp. of Mot. to Dismiss at 11). For the following reasons, the court is unable to agree.

The standard for demonstrating a materially adverse action is somewhat "less stringent" for a retaliation claim than it is for a substantive discrimination claim. Robinson v. Greenwood County, No. 8:10-02192, 2011 U.S. Dist. LEXIS 145031, at *18 (D. S.C. Nov. 22, 2011). For purposes of the anti-retaliation provision of Title VII, an adverse action need not affect an employee's "terms or conditions of employment." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 70 (2006). Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 67.

Applying this standard, the court concludes that the plaintiff's allegations are sufficient to withstand the defendant's motion to dismiss. Without additional information regarding the effects of the letter of counseling, the court is unable to find that its issuance would not have dissuaded a reasonable employee from pursuing a charge of discrimination. See Millea v. Metro-North R.R., 658 F.3d 154, 165 (2d Cir. 2011) (holding that a jury could conclude that a formal letter of reprimand would deter a reasonable employee from exercising his statutory

---

[2] Internal complaints about alleged discrimination constitute "protected activity," when an employee opposes an "actual unlawful employment practice" or "an employment practice that the employee reasonably believes is unlawful." Jordan v. Alternative Res. Corp., 458 F.3d 332, 338 (4th Cir. 2006). Thus, even if "the activities [the plaintiff] complained of do not amount to actual discrimination or harassment prohibited by Title VII, it is enough for a retaliation claim that [the plaintiff] reasonably believed she was engaging in protected activity by complaining about them." Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F. App'x 351, 355 (4th Cir. 2009).

11

rights, even though the letter did not directly or immediately result in any loss of wages or benefits, or remain in the employment file permanently); Caldwell v. Jackson, No. 1:03CV707, 2009 U.S. Dist. LEXIS 70918, at *30 (M.D. N.C. Aug. 11, 2009) (holding that a notice of warning issued by the plaintiff's employer was "sufficiently materially adverse to constitute actionable retaliation," even though the employer later rescinded the warning and it was never placed in the plaintiff's personnel folder).

Moreover, Koenig alleges that, in response to her August 16, 2007 email in which she raised concerns about a hostile work environment, Koenig received a response from her Command's legal counsel, in which he equated Koenig's disposal of the unwashed cup and spoon to "larceny, stealing, [or] theft"; opined that her allegations were "baseless"; and emphasized that he would "completely, thoroughly, and successfully defend any such frivolous action [she] may bring against the government" (Compl. at ¶ 24.)  Assuming the truth of Koenig's allegations, the court is also unable to conclude, at this stage of the litigation, that the email from legal counsel would not have dissuaded a reasonable person from pursuing a charge of discrimination.  For these reasons, the defendant's motion will also be denied with respect to Count Two.

### III.   Hostile Work Environment

Koenig's final claim is one for hostile work environment under Title VII.  "To state a hostile work environment claim, [the plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her [race]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and

(4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Having carefully reviewed the complaint and the arguments contained in Koenig's brief in opposition to the instant motion, the court is constrained to conclude that this claim is subject to dismissal.  In her brief in opposition, Koenig cites nine facts which she maintains are sufficient to state a viable hostile work environment claim.  Only three of those facts, however, relate, even arguably, to race: (1) the fact that Koenig is Caucasian and Williams is African-American; (2) the fact that Williams "involved the EEO officer" by copying the officer on an email; and (3) the fact that Williams received no discipline, even though Williams "made untrue and defamatory charges against [Koenig] and had in fact been discourteous toward her."  (Br. in Opp'n at 10.)  While the facts cited by Koenig may be sufficient to state a claim for discriminatory discipline, the court agrees with the defendant that the facts do not describe the type of severe or pervasive race-based harassment necessary to state a hostile work environment claim.  See Bass, 324 F.3d at 765 ("Bass' complaint is full of problems she experienced with her coworkers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment.").  Accordingly, the defendant's motion will be granted with respect to Count Three.

## Conclusion

For the reasons stated, the defendant's motion to dismiss will be granted in part and denied in part.  The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This __23rd__ day of March, 2012.

_____

Chief United States District Judge

13