CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 28 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CAROL J. KOENIG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:11CV00060 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| JOHN MCHUGH, SECRETARY ) | |
| DEPARTMENT OF THE ARMY, ) | By: Hon. Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendant. ) | |

This employment discrimination action under Title VII of the Civil Rights Act of 1964 is presently before the court on the defendant's motion for summary judgment. For the reasons set forth below, the court will grant the defendant's motion.

**Factual Background**

The following facts are presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

Carol J. Koenig, a Caucasian woman, was previously employed by the Department of the Army as a technical information specialist at the National Ground Intelligence Center ("NGIC") in Charlottesville, Virginia. She held that position from 2002 until she voluntarily retired in 2010.

The events giving rise to the instant action occurred in August of 2007, when Koenig served on a volunteer committee that maintained the kitchen on the third floor of the NGIC. On Monday, August 6, 2007, while cleaning the kitchen counters, Koenig threw away an unwashed cup and spoon, which had been soaking in the sink since the previous Thursday. Unbeknownst to Koenig, the items belonged to Dorsell Williams, an African-American NGIC employee.

That afternoon, Williams sent Koenig an email stating that she was "missing a coffee cup and spoon that [she] could have left in the sink soaking," and that another employee had heard Koenig threaten to dispose of the items. (Docket No. 40-1.) Williams emphasized that the cup had a "footprint in the sand verse and scene on it" and that it had sentimental value. In response, Koenig asked if it was "the cup that was there most of last week." (Docket No. 40-2.)

After receiving Koenig's one-line response, Williams sent Koenig another email at 7:30 a.m. on August 7, 2007, which stated as follows:

> The cup in question was definitely not there most of last week because I use it every day to make my cup of oatmeal. I could have left it on Thursday evening in the sink soaking. At any rate it was my personal property no matter how long it was there. I equate throwing away a person's personal property to stealing. That cup was given to me in mem[ory] of a deceased member of my family and the spoon was from my silverware collection. Both items were my personal items and no one had the right to dispose of them. All I am asking for is a simple yes or no. You know if you threw my cup and spoon in the trash.

(Docket No. 40-3.)

At 7:43 a.m., Koenig sent the following response:

> There was a cup and spoon in the sink all day Friday, Saturday, and Sunday and Monday morning when I did the morning kitchen clean up. I do not do dishes for folks and wash out globs of stuff (whatever it is) and dry them and put them in the cupboard. If stuff is left that long, I assume it is not wanted and dispose of it.
>
> I am very happy for you to now take over the kitchen duties of daily/weekly cleanup of all – counters, the white condiments holder, coffee pots, tray holding the coffee maker, side shelf, top of garbage can, all things left in the sink – (cleaner and Clorox under the sink – if you don't like that kind, buy what you want and treasurer will reimburse you), straighten out cupboard shelves, purchase of soaps, sponges, hand soaps and teas that will suit your desires. That way, things will be done as you wish them to [be] done. Please feel free to begin duties today.

(Docket No. 40-4.)

Six minutes later, Williams emailed Koenig and advised that she was going to "take this up with higher management ASAP." (Docket No. 40-5.) Williams emphasized that Koenig "had no right to dispose of [her] personal property." (Id.)

Williams then forwarded her email exchange with Koenig to the other two members of the volunteer kitchen committee: Jeffrey Tibbetts, who supervised Williams, and Deborah Green. Williams noted that she wanted to let them know that "reckless actions [were] being taken on people's personal property." (Docket No. 40-6.) Williams emphasized that "[n]o one has a right to destroy someone's treasured possessions," and that she intended "to take this to management, EEO, Security, and the lawyer." (Id.)

At 8:18 a.m., Williams sent NGIC equal employment opportunity ("EEO") officer Deborah Miller, NGIC legal counsel Gerald Reimers, and NGIC security officer Edith Napier the following email with the subject line "Disposal of Personal Property":

> Ladies and Gentleman,
>
> I have suffered actions that warrant me to contact you. Someone has taken it upon themselves to destroy my personal coffee cup which had extreme sentimental value and a spoon from my silverware collection. The person in question is a co-worker. The cup was ordered from a catalog and given to me in memory of my deceased grandmother many years ago. The person has admitted that she trashed my personal property. This may seem petty to you, but this person has done this before to other co-workers. I would be willing to just let it go, but as I have said the cup had extreme sentimental value to me. What recourse do I have at this point? Again I apologize for having to contact you in the first place. I am mad and hurt by this person's actions. She should not be allowed to recklessly dispose of people's personal property and I equate that to stealing.

(Docket No. 40-7.) Williams then forwarded the emails to Kay Bailey, Koenig's Caucasian supervisor, noting that she was "sorry to bother [Bailey] with this." (Docket No. 40-8.)

At 9:01 a.m., Williams sent a final email to Koenig, which stated as follows:

Carol,

I pray for you. You have the nerve to admit you trashed a cup that meant the world to me and not even offer an apology. Through it all I take comfort in knowing that in the Bible God says vengeance is mine. You have a blessed life.

(Docket No. 40-10.)

At 9:45 a.m., Deborah Miller forwarded Williams' "Disposal of Personal Property" email to Maureen Finn, the NGIC human resources officer. Miller mentioned that Finn "may get involved if disciplinary action is required." (Docket No. 40-11.)

Before Kay Bailey, Koenig's supervisor, had the opportunity to read the emails from Williams, Jeffrey Tibbetts stopped by Bailey's office and informed her of the conflict between Koenig and Williams. (Docket No. 40-28 at 72.) After briefly speaking with Koenig, and being advised that Koenig no longer planned to take part in cleaning the kitchen, Bailey was under the impression that the matter was resolved. (Id. at 74.) However, later that day, at 2:51 p.m., Bailey forwarded Williams' "Disposal of Personal Property" email to Koenig and asked Koenig to see her about the issue. Bailey noted that Williams had involved Deborah Miller, Edith Napier, and Gerald Reimers. (Docket No. 40-12.)

In her response to Bailey's email, Koenig asked if Bailey had seen the "whole thread" of messages. (Docket No. 40-13.) Koenig advised Bailey that she was very upset that Williams had "threatened [her] personally with [the] vengeance statement," and that she "intend[ed] to raise this issue of [her] personal safety at work on Monday when [she has] time -- with Mr. Reimers, Ms. Napier, Ms. Miller and Mr. Miller (Doug)." (Id.)

Approximately 30 minutes later, Bailey forwarded Koenig's response to Tibbetts. Bailey's email included the following message:

4

> I told Carol I wanted to talk to her about this issue and that Dorsell had notified Debbie Miller, Edith Napier, and Gerry Reimers. I mentioned these names to Carol, because I wanted to emphasize that this was not an internal matter between her and Dorsell and that others were now involved. Below is Carol's response. I think we should give Doug Miller [Bailey and Tibbetts' supervisor] a "heads-up" on this situation.

(Docket No. 40-14.)

Koenig subsequently met with Bailey on August 9, 2007 and attempted to provide her "side of the story." (Docket No. 40-27.) According to Koenig, Bailey advised her that it was "too late," and that Koenig was "going to be disciplined anyway." (Id.)

On Friday, August 10, 2007 at 8:33 a.m., Koenig emailed Deborah Miller and requested an appointment. Koenig indicated that she needed to speak with Miller about a "work related situation" in which Koenig believed that she had been treated in a "discriminatory manner." (Docket No. 40-15.) After Miller identified a possible meeting date and time, Koenig told Miller that she was "waiting for a return call from [her] attorney," and that she would "get back to [Miller] when [she] had more information that [would] impact this situation." (Docket No. 35-13.)

Shortly after emailing Miller on August 10, 2007, Koenig requested to meet with Edith Napier and Maureen Finn. Koenig indicated that she needed to speak to Napier "about a work related situation during the course of which [her] personal safety . . . was threatened" (Docket No. 35-14), and that she needed to meet with Finn about a situation that "warranted a letter of reprimand in the file of an employee whom [she felt] had slandered and libeled [her]" (Docket No. 35-15).

On August 14, 2007, Bailey spoke to Carla Shamberger regarding the conflict between Koenig and Williams. (Docket No. 35-15.) Shamberger is a management employee relations specialist based in Arizona. Bailey was referred to Shamberger by Finn, after Bailey contacted

5

Finn for advice. According to Bailey, Shamberger opined that Koenig's conduct warranted a letter of counseling. (Docket No. 40-28 at 77-78.)

On August 16, 2007, Koenig sent an email to Napier and Reimers requesting their assistance. The email was copied to Bailey, Finn, and Deborah Miller. After quoting portions of the emails from Williams, which referenced stealing and vengeance, Koenig stated as follows:

> 1. Ms. Dorsell Williams has threatened my work safety and security by stating that she is seeking vengeance against me.
>
> 2. Ms. Dorsell Williams has libeled me by writing that my actions are equal to those of a thief.
>
> 3. Ms. Dorsell Williams has slandered me by telling other NGIC employees that my actions (following established third floor kitchen clean-up procedures) are those of one who steals.
>
> 4. Ms. Dorsell Williams has blatantly disrespected me by disparaging my volunteer coffee committee efforts a.) when I didn't buy her specifically preferred type and brand of tea, and b.) when I cleaned and procedurally disposed of property that is clearly UNAUTHORIZED by NGIC regulation.
>
> This deliberate, unwarranted verbal and emotional attack upon me has caused me great anxiety when I am at NGIC where I am now forced to labor in a hostile work environment. This hostile work environment has been created by Ms. Dorsell Williams' slander, libel and threats against me. Presently I am so upset that I am unable to perform my job duties to the best of my abilities. The stress that she has created has caused me sleep deprivation, grievous emotional distress and intestinal disorders which are affecting my general health just as I am about to be scheduled for serious eye surgery.
>
> I ask your assistance in helping NGIC meet its Federal managerial obligations to provide all employees with a safe, stress-free, healthy work environment.
>
> I ask that NGIC suspend Ms. Dorsell Williams for creating this racially undertoned hostile work environment.

(Docket No. 40-16.)

On Friday, August 17, 2007, Napier sent Koenig an email advising that she and Finn could meet with Koenig on Monday, August 20, 2007. Upon receiving Napier's email, Koenig sent the following reply, which was copied to Bailey, Finn, Reimers, and Deborah Miller:

> I wish to make it VERY clear by written record, that I wish to address each of you INDIVIDUALLY. I do not like the "gang" approach to problem solving; it tends to promote group think (mobbing), or no think at all.
>
> I did not bring my notes with me today, and I am seeing my attorney today after work, so I am not yet prepared to speak definitively on this issue. However the thrust of each meeting I ask to hold with each person INDIVIDUALLY, is: how do you propose to discipline Ms. Dorsell Williams for her slander, libel, threats and disrespect towards me. I am now taking prescription medication (with side effects) for the migraines I awake with each morning, because I have come to work in the hostile work environment here created by Ms. Dorsell Williams.

(Docket No. 35-17.)

At 11:14 a.m. on August 20, 2007, Bailey emailed Shamberger a letter of counseling for Koenig, and asked Shamberger to provide suggestions. (Docket No. 40-17.) The draft read as follows:

> SUBJECT:   Letter of Counseling
>
> This letter is intended to express my concerns about your recent behavior on August 6, 2007. It is my understanding that you threw away a cup and spoon belonging to Ms. Dorsell Williams during your kitchen clean-up duties. According to Ms. Williams, these items had been left soaking in the sink on Thursday evening, and someone overheard you say that the items would be disposed of if they were left there one more day. Your behavior toward Ms. Williams was disrespectful, and I want to make it clear that such behavior will not be tolerated in the future. All co-workers should be treated with respect, since working relationships are critical to mission success. Any further instances of this behavior may result in disciplinary actions being taken against you.
>
> This letter will be added to your employee folder but will not be maintained in your official personnel file.

(Docket No. 40-17.) Shamberger replied that she would "be happy to take a look" at the letter, and that she would get back to Bailey in a few days. (Docket No. 40-18.)

7

At 12:35 p.m. on August 20, 2007, Reimers sent an email responding to Koenig's requests for assistance. Reimers' email, which was copied to Napier, Bailey, Finn, and Deborah Miller, stated as follows:

> Ms. Koenig, your email below indicates that it is your desire to meet individually to discuss punishment of Ms. Williams. Whether these individuals wish to meet individually or collectively is their call to make and not yours. If you don't want to meet with them if they choose the latter so be it. Additionally, I am advising them as government employees that the topic of another person's discipline with you would be entirely improper and will not be discussed with you. Such a topic/matter is within the purview of the other person's supervisory chain of which you are not a part. Your allegation of slander/libel is baseless. Taking another person's property without their permission and permanently depriving them of it is by definition larceny, stealing, theft, etc. . . . whatever you call it, it is what it is, the fact that you don't like it doesn't change things. Additionally, quoting from scripture with a focus on the word "vengeance" is hardly something any third party would reasonably construe as a physical threat to your person. You don't have a case. Your chain of command will address your improper taking of another person's property independently. As for your allegations, I will advise her chain that I see absolutely no case for misconduct against her based on what you've presented. What I do see is a tit-for-tat preemptive attempt on your part to try to dissuade your chain from acting upon your own misdeed. I can assure you this, that I will completely, thoroughly, and successfully defend any such frivolous action you may bring against the government.

(Docket No. 40-19.)

At 3:13 p.m., Napier also responded to Koenig's earlier emails. Napier emphasized that she had "no idea where [Koenig's] comments regarding 'gangs' and 'mobbing' [were] coming from," and that the information provided by Koenig indicated overlapping areas of responsibility between security and personnel. (Docket No. 35-18.)

On August 23, 2007, Shamberger advised Bailey that she was going to have Reimers review the letter of counseling that Bailey had drafted. Upon receiving Reimers' input, Shamberger forwarded Bailey a revised letter of counseling. Bailey adopted all of the suggested revisions, and issued the letter of counseling to Koenig on August 27, 2007. The final version, which Koenig refused to sign, read as follows:

8

SUBJECT:   Letter of Counseling

1.   This written counseling is intended to express my concern about your recent behavior on or about August 6, 2007 when your co-worker, Ms. Dorsell Williams left a cup and spoon belonging to her in the common office sink area and during your clean up you disposed of them without regard to her wishes or her personal property.  This unacceptable behavior towards Ms. Williams was discourteous and will not be tolerated.  I expect you to treat all of your co-workers with respect, since working relationships are critical to mission success.

2.   You are advised that this written counseling will not be made a matter of record in your Official Personnel File.  If, however, your misconduct persists after receiving this written counseling, I will consider taking formal disciplinary action against you.  Depending on the particular circumstances, such action could include the full range of available penalties including your removal from Federal Service. If you have any questions concerning any information in this letter, please contact me for clarification.

(Docket No. 40-26.)

The letter was the second letter of counseling issued to Koenig in a twelve-month period. On September 6, 2006, Ann Miller, the acting division chief, issued Koenig a letter of counseling for engaging in discourteous behavior during a meeting with Doug Miller.  (Docket No. 35-34 at 27.)  The letter emphasized that such behavior would not be tolerated and that any further instances of discourtesy may result in disciplinary action.  Bailey and Shamberger were aware of the prior letter when the decision was made to issue the second letter of counseling in August of 2007.

## Procedural History

After exhausting her administrative remedies, Koenig filed the instant action on September 20, 2011, asserting claims of race discrimination, retaliation, and hostile work environment. The defendant subsequently moved to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On March 26, 2012, the court dismissed the plaintiff's hostile work

environment claim. The court denied the defendant's motion with respect to the plaintiff's claims of race discrimination and retaliation.

Following the completion of discovery, the defendant moved for summary judgment. The court held a hearing on the motion on November 28, 2012. The motion has been fully briefed and is ripe for review.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movant. Anderson, 477 U.S. at 255. To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable jury could return a verdict in her favor. Id. at 248. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

### I.   Race Discrimination

In Count One of her complaint, Koenig asserts a claim of race discrimination under Title VII. Specifically, Koenig contends that she was issued the letter of counseling in August of 2007 because of her race. (Docket No. 1 at 1.)

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . race. 42 U.S.C. § 2000e-2(a)(1). When there is no direct evidence of

discrimination, a plaintiff may proceed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-07 (1973).[1] See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). This framework requires the plaintiff to first establish a prima facie case of discrimination by a preponderance of the evidence. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If a plaintiff establishes her prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp., 411 U.S. at 802-03. Once the employer comes forward with such a reason, "the burden reverts to the plaintiff to establish that the employer's non-discriminatory rationale is a pretext for intentional discrimination." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 258 (4th Cir. 2006). This "final pretext inquiry merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination, which at all times remains with the plaintiff." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks and alteration omitted).

A.   **Prima Facie Case**

To establish a prima facie case of discriminatory discipline, a plaintiff must show: (1) that she is a member of a protected class under Title VII; (2) that the prohibited conduct in which she engaged was comparable in seriousness to the misconduct of an employee outside the protected class; and (3) that the disciplinary measures enforced against her were more severe than those enforced against the other employee. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). In satisfying the second and third elements, the plaintiff must show that the other employee was similarly situated in all relevant respects. Monk v. Potter, 723 F. Supp. 2d 860,

---

[1] The parties have confined their arguments to the McDonnell Douglas framework.

877 (E.D. Va. 2010); see also Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."). Such a showing includes "evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Heyward v. Monroe, No. 97-2430, 1998 U.S. App. LEXIS 30855, at *6 (4th Cir. Dec. 7, 1998) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1982)).

In this case, Koenig attempts to establish a prima facie case of discriminatory discipline by arguing that Williams was not disciplined, even though she "acted discourteously by leaving a dirty cup and spoon soaking in a sink in a shared office kitchen for several days." (Docket No. 39 at 16-17). The court agrees with the defendant, however, that this argument is insufficient. Even if the court assumes that both employees engaged in equivalent misconduct, Koenig has not proffered evidence sufficient to show that she and Williams were similarly situated in all relevant respects. Courts have recognized that "work history is a relevant factor in determining comparability," and, in this case, there is no evidence that Williams had any history of misconduct. Sook Yoon v. Sebelius, 481 F. App'x 848, 850 (4th Cir. 2012) (citing Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)). In contrast, Koenig was counseled for discourteous behavior less than a year before she received the letter of counseling at issue in this case. Given this distinguishing factor, the court agrees with the defendant that Williams is not a proper

comparator, and that Koenig is unable to establish a prima facie case of discrimination.[2] See Austen v. HCA Health Servs. of Va., Inc., 5 F. App'x 253, 254 (4th Cir. 2001) (holding that a male employee was not similarly situated to female employees who engaged in the same misconduct, since he had a record of disciplinary warnings); Plummer v. Fruit, No. 98-1323, 1999 U.S. App. LEXIS 5039, at *4 (4th Cir. Mar. 24, 1999) (noting that while other employees engaged in the same misconduct, the plaintiff "offered no evidence that any employee had a disciplinary record similar to hers").

### B. Pretext

Even if Koenig could establish a prima facie case of discrimination, the defendant has offered a legitimate, nondiscriminatory reason for issuing the letter of counseling to Koenig, namely that Koenig acted with discourtesy by disposing of a co-worker's personal property. Because the defendant has clearly met his burden of proffering a permissible reason for the letter of counseling, Koenig is required to show that the asserted reason is "actually a pretext for discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004). While Koenig advances several arguments in an attempt to establish pretext, the court concludes she has failed to carry her burden.

Koenig first cites to evidence which casts some doubt on the defendant's assertion that Bailey, alone, made the final decision to issue the letter of counseling. For instance, during the administrative proceedings, Bailey testified that she issued the letter of counseling because she

---

[2] The defendant also argues that Koenig is unable to establish a prima facie case of discrimination because the letter of counseling did not rise to the level of an adverse employment action. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required. An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment.") (internal citations and quotation marks omitted). Based on the court's resolution of the discrimination claim, it need not address this argument. Even assuming that the letter of counseling constituted an adverse employment action, Koenig has failed to demonstrate a prima facie case of discrimination.

"was told to do so by Carla Shamberger," and because she was advised to do so by "management." (Docket No. 40-28 at 77, 88.)  Such evidence, however, is not probative of pretext.  "In demonstrating the . . . decision was pretext, [the plaintiff has] to prove 'both that the reason was false, and that discrimination was the real reason.'" Adams v. Trs. of the Univ. of N. Carolina-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (quoting Jiminez v. Mary Washington Coll., 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).  In other words, "[i]t is not enough to disbelieve" an assertion made by defendant; "the fact-finder must believe [the plaintiff's] explanation of intentional race discrimination." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004).  Here, the mere fact that Shamberger or other officials may have played a role in the final decision to issue the letter of counseling does not demonstrate that the asserted justification for the letter was false, or that the letter was actually issued because of Koenig's race.

Koenig also takes issue with the wording of the letter of counseling, namely the fact that the letter identifies Williams by name, even though Koenig did not know that the cup and spoon belonged to Williams at the time she disposed of them.  While identifying the owner of the cup and spoon may have been unnecessary or unfair, a federal court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (internal citation and quotation marks omitted).  Instead, the court's "sole concern" is whether the reason for the challenged employment action was "discriminatory." Id.  Here, the court is convinced that the wording of the letter of counseling provides no basis upon which a reasonable jury could infer pretext.

Koenig's remaining arguments are also insufficient to demonstrate that race discrimination was the real reason behind the disciplinary action taken against Koenig.  Once again, Koenig

14

emphasizes that she was issued a letter of counseling and Williams was not. While comparator evidence can be "especially relevant" to a showing of pretext, McDonnell Douglas Corp., 411 U.S. at 804, the persons being compared must be "similarly situated . . . in all relevant respects." Odom v. Int'l Paper Co., 652 F. Supp. 2d 671, 692 (E.D. Va. 2009); see also Lightner, 545 F.3d at 265. As discussed above, the court is convinced that this requirement cannot be met in the instant case.

Finally, Koenig offers her own conclusory opinion that "NGIC did not want to upset any of its African-American employees or appear to them as if it favored Caucasian employees." (Docket No. 39 at 17.) Such unsupported speculation is also insufficient to establish that the asserted basis for the letter of counseling was pretext for race discrimination. See Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1985) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.") Likewise, the mere fact that Koenig is Caucasian and Williams is African-American is inadequate as a matter of law to attribute the letter of counseling to race. As the United States Court of Appeals for the Fourth Circuit explained in Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000):

> Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion. Instead, legally sufficient evidence is required to transform an ordinary conflict . . . into an actionable claim of discrimination.

Id. at 282.

For the reasons stated, the court concludes that Koenig has failed to proffer sufficient evidence of pretext to avoid summary judgment. Accordingly, the defendant's motion will be granted with respect to Koenig's claim of race discrimination.

## II. Retaliation

In Count Two of her complaint, Koenig asserts a claim of retaliation under Title VII. In addition to prohibiting discrimination on the basis of a protected trait, Title VII makes it unlawful for an employer to retaliate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." See 42 U.S.C. § 2000e-3(a). To prevail on her retaliation claim, Koenig must show: (1) that she engaged in a protected activity; (2) that the defendant took a materially adverse action against her; and (3) that a causal connection existed between the protected activity and the materially adverse action. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). For the following reasons, the court concludes that Koenig has failed to establish the first element and, thus, that the defendant is also entitled to summary judgment with respect to this claim.

In the context of a retaliation claim, a "protected activity" can be either "opposition" activity or "participation" activity. Id. at 406. As relevant here, opposition activity includes internal complaints about alleged discriminatory actions. Id. For such activity to be protected, however, an employee must oppose an "actual unlawful employment practice" or "an employment practice that the employee reasonably believes is unlawful." Jordan v. Alternative Res. Corp., 458 F.3d 332, 338 (4th Cir. 2006) (emphasis in original). "Because the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." Id. at 339.

In this case, Koenig contends that she engaged in "protected activity" on two occasions, the first of which was on August 10, 2007, when she asked to speak to Deborah Miller about a "work related situation" in which she believed that she had been treated in a "discriminatory manner." (Docket No. 40-15.) Although the email, itself, provides no additional details regarding the

16

alleged discrimination, Koenig asserts that she sent the email after learning that a decision had been made to discipline her "based solely on the complaint of an African American co-worker." (Docket No. 39 at 5.)

While Koenig may have subjectively believed that she was being disciplined in violation of Title VII, she has failed to show that her belief was objectively reasonable. Aside from Koenig's own bare assertions, there is no evidence that the decision to discipline Koenig was based on race. On this record, the court is convinced that no reasonable person could have believed that Koenig was the victim of race discrimination. See Coleman v. Loudon County School Board, 294 F. App'x 778, (4th Cir. 2008) (holding that the plaintiff's belief that job candidates were being discriminated against on the basis of race was not objectively reasonable, where there was "no evidence whatsoever, other than [the plaintiff's] own self-serving, unsubstantiated opinions"); Mann v. First Union Nat'l Bank, 185 F. App'x 242, 248 (4th Cir. 2006) (holding that the plaintiff had no reason to conclude that actions were taken on the basis of her gender, where there was no evidence of discrimination "other than [the plaintiff's] bare assertions"); Perry v. Kappos, 776 F. Supp. 2d 182, 197 (E.D. Va. 2011) ("Unsupported speculation is not enough to withstand a motion for summary judgment. No objectively reasonable person in Plaintiff's position would believe, based on the facts posited by Plaintiff, that he or she was being discriminated against on the basis of race, gender, or color."). Consequently, Koenig's August 10, 2007 email did not constitute "protected activity" under Title VII.

Koenig also claims that she engaged in "protected activity" when she emailed Napier, Reimers, Bailey, Finn, and Deborah Miller on August 16, 2007, and complained about Williams' conduct. As set forth above, Koenig asserted that Williams had created a "racially undertoned hostile work environment" by sending emails referring to vengeance and comparing Koenig's

17

actions to those of a thief. (Docket No. 40-16.) Once again, the court has no reason to doubt that Koenig found Williams' comments subjectively offensive. Nonetheless, the evidence is inadequate as a matter of law for Koenig to have reasonably believed that she was being subjected to a racially hostile work environment. None of Williams' messages to Koenig or others mentioned Williams' race, Koenig's race, or race in general. While Williams emailed the EEO officer (and other NGIC officials) on one occasion to complain about the disposal of her personal property, neither that email, nor the fact that Koenig is Caucasian and Williams is African-American, provides a reasonable basis for believing that Williams' statements were racially motivated or tainted with racial hostility. Because Koenig could not have reasonably believed that Williams' conduct gave rise to a violation of Title VII, Koenig's August 16, 2007 email did not constitute "protected activity" under the statute.

For these reasons, the court concludes that Koenig is unable to establish the first element required to prevail on a claim of retaliation.[3] Accordingly, the defendant is also entitled to summary judgment on this claim.

## Conclusion

For the reasons stated, the court will grant the defendant's motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 28th day of January, 2013.

Chief United States District Judge

---

[3] Having reached this conclusion, the court need not address the remaining elements. While Koenig argues that Reimers' August 20, 2007 email was "on its face, unlawful retaliation" (Docket No. 39 at 22), her failure to establish that she engaged in statutorily protected activity is fatal to her retaliation claim under Title VII. See Valderrama v. Honeywell Tech. Solutions, Inc., 473 F. Supp. 2d 658, 664 n. 11 (D. Md. 2007) ("Title VII's anti-retaliation provision only protects employees who oppose practices 'reasonably believed' to be unlawful under Title VII.") (quoting Navy Fed. Credit Union, 424 F.3d at 406).